(163 App. Div. 768)

HATHORN et al. v. NATURAL CARBONIC GAS CO.    (No. 158–12.)

(Supreme Court, Appellate Division, Third Department.    September 9, 1914.)

1. INJUNCTION (§ 235*)—LIABILITY ON BOND—CONDITIONS PRECEDENT.
    There is no breach of the condition of the statutory undertaking given as a condition of the granting of a temporary injunction, unless the court shall finally decide that plaintiff was not entitled to the injunction, or unless something occurs equivalent to such decision.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 529–537; Dec. Dig. § 235.*]

2. INJUNCTION (§ 235*)—LIABILITY ON BOND—CONDITIONS PRECEDENT.
    Where a plaintiff enters an order vacating a temporary injunction and discontinuing the action, such order is equivalent to a determination that he was not entitled to the injunction, and the defendant is entitled to an order of reference to ascertain his damages; but such a determination is not to be inferred because of a dismissal on account of matters arising subsequent to the commencement of the action and not involving the merits thereof.

    [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 529–537; Dec. Dig. § 235.*]

3. INJUNCTION (§ 129*)—DISMISSAL—GROUNDS—TRIAL RENDERED FUTILE.
    Where, pending an action by owners of real property upon which were mineral springs, to enjoin an owner of nearby lands from accelerating the flow of carbonic acid gas on its lands, thereby injuring plaintiff's lands,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in which a temporary injunction was granted on condition that plaintiff file an undertaking conditioned to pay defendant's damages from the injunction, if the court should finally decide that plaintiff was not entitled thereto, the state condemned and appropriated the lands of both parties, thereby rendering the trial of the action futile, except for the purpose of determining defendant's damages from the injunction, an order dismissing the action, but providing that such dismissal should be without prejudice to any right which defendant might have by reason of the undertaking, or to any action or proceeding thereon, and that it was the purpose of the order to discontinue the action without deciding whether plaintiffs were entitled to the preliminary injunction, was erroneous, since defendant's only recourse to obtain a determination as to plaintiff's right to the injunction was by a trial of the action on the merits, and if the order did not prevent this it was ineffective, while if it did work such result it was unjust to defendant.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 279–287; Dec. Dig. § 129.*]

Appeal from Special Term, Albany County.

Action by Emily H. Hathorn and another against the Natural Carbonic Gas Company. From an order (83 Misc. Rep. 582, 146 N. Y. Supp. 271) granting a discontinuance of the action without prejudice to any right by action or proceeding which defendant might have upon the undertaking given by plaintiffs upon obtaining a preliminary injunction and denying defendant's motion for dismissal of the action for failure of plaintiffs to prosecute it, defendant appeals. Reversed in part and affirmed in part.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Morris & Plante, of New York City (Guthrie B. Plante, of New York City, of counsel), for appellant.

Rockwood, Scott & McKelvey, of Saratoga Springs (L. B. McKelvey, of Saratoga Springs, of counsel), for respondents.

LYON, J. The plaintiffs were the owners of real property situated in the village of Saratoga Springs, N. Y., known as "Hathorn Spring," and the defendant was the owner of 21 acres of land situated about 4,600 feet therefrom. This action was brought in July, 1908, to obtain a permanent injunction restraining the defendant from pumping from wells which it had drilled, and from extracting from mineral waters taken from its lands, carbonic acid gas, which it was engaged in compressing, liquifying, and selling for commercial purposes. The complaint alleged that there existed underneath the surface of that territory a system of valuable mineral waters which held in solution natural mineral salts and an excess of carbonic acid gas without which the mineral salts would be precipitated and the waters become turbid and valueless; that by reason of the acts of the defendant, particularly in accelerating the flow of the carbonic acid gas by pumping and otherwise, the force of the natural flow of the mineral waters had been lessened, the pressure of the carbonic acid gas confined in the rocks underlying the lands of the respective parties, as well as of the whole region, reduced, the flow of water at

plaintiffs' spring diminished, the quality of its water impaired, and the spring rendered less valuable, all to plaintiffs' damage in the sum of $100,000. The complaint also alleged that the acts of the defendant were in violation of chapter 429 of the Laws of 1908, entitled "An act for the protection of the natural mineral springs of the state, and to prevent waste and impairment of its natural mineral waters," which statute went into effect May 20, 1908.

The answer denied that the defendant had done any improper or illegal acts, or that in the prosecution of its business it had lessened the force of the natural flow of waters at plaintiffs' spring, or had impaired the quality thereof, or had rendered plaintiffs' spring less valuable, and alleged that the lands owned by it contained natural carbonic gas in dry form, and mineral water holding in solution natural mineral salts and an excess of carbonic acid gas, that while it had sunk wells and fitted the same with tubing and pumps, it had not accelerated or exercised any force of compulsion upon the water or gas, but had simply lifted to the surface, in fact, less water and gas than had naturally flowed into its wells. The defendant also denied having violated said statute, and alleged that the same was unconstitutional.

In August, 1908, the Special Term granted a preliminary injunction restraining the defendant from accelerating by pumping or otherwise the natural flow of mineral water or carbonic acid gas upon its lands, or doing any act whereby the natural flow of water from plaintiffs' spring was lessened, or the quality of its waters impaired, or the carbonic acid gas or mineral ingredients diminished. The order was granted upon condition that the respondents execute and file an undertaking in the sum of $20,000 conditioned to pay the appellant such damages, not exceeding said sum, as it might sustain by reason of the injunction if the court should finally decide that the respondents were not entitled thereto. The undertaking of a surety company was accordingly given. Upon appeal the order was somewhat modified and as modified affirmed (128 App. Div. 33, 112 N. Y. Supp. 374), and upon further appeal the modified order was affirmed (194 N. Y. 326, 87 N. E. 504, 23 L. R. A. [N. S.] 436, 128 Am. St. Rep. 555, 16 Ann. Cas. 989) the Court of Appeals holding that said statute was constitutional to the extent indicated in the opinion of that court. In March, 1911, this decision was approved by the United States Supreme Court in an action brought by a stockholder of the appellant to test the constitutionality of the statute. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160.

The subject of property rights in the waters and gas at Saratoga Springs was provocative of much litigation. Several actions were instituted by the Attorney General on behalf of the people of the state, one of which was brought against the appellant, in which it was held (People v. Geysers Natural Gas Co., 196 N. Y. 421, 90 N. E. 441), that the liability of the defendant for the acts herein complained of was not determinable as matter of law, but was dependent upon the decision of questions of fact.

In April, 1910, in a proceeding of foreclosure instituted in the United States court, a receiver of the appellant, which was a New York corporation, was appointed, and in November, 1910, a decree was entered under which in March, 1911, its property, real and personal, was sold. In May, 1911, such sale was confirmed, and thereupon its property, including any right of action upon the undertaking herein, was transferred to a corporation of the same name, incorporated under the laws of the state of New York for the purpose of taking over and operating the plant. In February, 1911, the lands of the respondents were condemned and appropriated by the Commissioners of the State Reservation, under the provisions of chapter 569, Laws of 1909. In June, 1911, the lands of the appellant were also condemned and appropriated under such act. No further proceedings seem to have been had in the action until in June, 1913, when the respondents moved to discontinue the action upon the ground that circumstances had arisen since its commencement, one of which was the insolvency of the appellant, which, while in no way involving the merits, would render the trial of the case futile and unnecessary, and a cost and burden to the state in determining issues of no present consequence. The appellant thereupon by cross-motion sought a dismissal of the action upon certain grounds, among which were the failure of respondents to diligently prosecute the same; that the questions involved, except as to any damages sustained by the respondents, had become academic; and that, as was admitted by the moving affidavit of the respondents, further prosecution of the action would be futile. The appellant evidently assuming under the authority of Kelley v. McMahon, 37 Hun, 212, that, the case being in equity, the court had power to dismiss the complaint in part, and to retain it in part for the purpose of considering at a later stage parts of the case not then passed upon, and that the court might reserve the questions relating to the injunction, served as part of its motion papers an offer to consent to a discontinuance of the action with such reservation. However, the offer was not accepted, and a withdrawal thereof is recited in the order appealed from as having been considered upon the hearing of the motions. The court denied appellant's motion to dismiss the action for a failure to prosecute it, but granted an order of discontinuance upon the ground that, subsequent to the commencement of the action, the appellant's property had been sold under a judgment, and the appellant was no longer performing the acts enjoined, as the properties of both parties had been appropriated by the state of New York, which was then in possession thereof, "by reason of which facts which do not affect the merits of the controversy between the parties, the further prosecution of this action would be a useless formality and would require the determination by a court of equity of issues in which neither the parties nor the state have any further interest, and the further prosecution of said action is futile." The order further provided as follows:

"And it is further ordered that this order shall be without prejudice to any right which the defendant may have by reason of the undertaking heretofore filed by the plaintiff as a condition of the temporary injunction order heretofore granted in this action or to any action or proceeding which the defendant

may be advised to take thereon; the purpose and intention of this order being to discontinue the said action for the reasons hereinbefore stated, but without deciding whether or not the plaintiffs were entitled to the preliminary injunction when granted."

From such order this appeal has been taken, the appellant complaining that the effect of the order appealed from is to deprive the appellant of the right to recover upon the undertaking the damages sustained by it by reason of the preliminary injunction, which the appellant claims ruined its business, forced it into a receivership, and inflicted damages in excess of the amount of the undertaking. It is the contention of the appellant that a final determination that the respondents were not entitled to the injunction is required by the terms of the undertaking, and must be established, before the appellant is entitled to recover thereon.

[1] There is no breach of the condition of the statutory undertaking unless the court shall finally decide that the plaintiff was not entitled to the injunction, or unless something occurs equivalent to such decision. Palmer v. Foley, 71 N. Y. 106; Benedict v. Benedict, 76 N. Y. 600; Wilson v. Wilson, 130 App. Div. 70, 114 N. Y. Supp. 455. A judgment of dismissal of the complaint upon the grounds of expiration of term of contract without fault on the part of the plaintiff, and that it did not state a cause of action, is a final decision that the plaintiff was not entitled to the preliminary injunction, and establishes the right of the defendant to damages, leaving the amount open to proof. Williams v. Montgomery, 148 N. Y. 519, 524, 43 N. E. 57.

[2] Where plaintiff enters an order vacating an injunction and discontinuing the action, such an order is equivalent to a determination that the party is not entitled to an injunction, and the defendant is entitled to an order of reference to ascertain damages. Pacific Mail Steamship Co. v. Toel, 85 N. Y. 646; Wynkoop v. Van Beuren, 63 Hun, 500, 18 N. Y. Supp. 557; Perlman v. Bernstein, 83 App. Div. 203, 82 N. Y. Supp. 148. However, such determination is not to be inferred because of a dismissal on account of matters arising subsequent to the commencement of the action which in no way involved the merits of the action. Appollinaris Co. (Ltd.) v. Venable, 136 N. Y. 46, 32 N. E. 555; Taylor v. Beolchi, 37 Misc. Rep. 693, 76 N. Y. Supp. 379.

The main reliance of respondents for justification of the order appealed from is based upon the cases of Appollinaris Co. (Ltd.) v. Venable and Taylor v. Beolchi. In the former case the complaint was dismissed upon the motion of defendants in punishment of the plaintiff for contempt of court. Thereupon the Special Term granted an order appointing a referee to assess the damages. The case is simply an authority for the proposition that, when the complaint is dismissed because of a matter arising subsequent to the commencement of the action, such dismissal does not constitute a final determination of the action and warrant granting an order appointing a referee to assess the damages sustained by the issuing of a preliminary injunction. In the Taylor Case the court expressly held that the plaintiff was entitled to the injunction when granted.

[3] The order appealed from states that it is granted, "but without deciding whether or not the plaintiffs were entitled to the preliminary injunction when granted." It would therefore appear that appellant's only recourse to obtain a determination of that question is by a trial of the action upon the merits.

It is difficult to fully comprehend the usefulness of the order appealed from. The following statement appears in respondents' brief as their construction thereof:

"This order has no other effect than to bring to an end, in a decent and orderly manner, a litigation which has now become futile," the trial of which would be expensive and would consume much time, "and while it does this on the one hand, it expressly reserves the defendant's rights on the other."

Also, as the heading of point 2 of respondents' brief it is said:

"The order in its present form is necessary to prevent serious injustice to the plaintiffs; for otherwise they would be compelled to notice this case for trial and prosecute the action to judgment, in order to avoid being mulcted in heavy damages by reason of the undertaking."

It hardly rests with the respondents, after having instituted the action and obtained the injunction, to complain of being called upon to prove that granting the injunction was warranted, or to claim that the appellant should not be properly compensated for the damages sustained by it by reason of the injunction, if it shall prove to have been improperly granted. If the order does not prevent appellant from forcing the issues to trial and obtaining a final determination thereof upon the merits, it is ineffective and useless for the purpose for which it was evidently obtained. If it does work such a result, it is grossly unjust to the appellant. In either event it should be vacated as to the portion thereof discontinuing the action.

The Special Term was clearly correct in refusing to dismiss the action for failure to prosecute it, as the answer was not served until January 11, 1910, and the proofs show that the respondents used due diligence in prosecuting the action.

Order reversed, excepting as to the portion thereof denying appellant's application for a dismissal of the action, and, as to such portion, affirmed.

Order reversed, excepting as to the portion thereof denying the defendant's application for a dismissal of the action and as to such portion affirmed, without costs to either party. All concur.